AO 91 (Rev. 12/93) Criminal Complaint ▇

# United States District Court

## DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

v.

JENNIFER VICTORIA MARTIN



CRIMINAL COMPLAINT

CASE NUMBER: 05- 89M

(CR05-65)

(Name and Address of Defendant)

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

On or about __June 12, 2005__ in __New Castle__ County, in the District of Delaware, defendant did

conspire to commit wire fraud, that is did conspire to devise and intending to devise a scheme or artifice to defraud and to obtain money

and property by means of false and fraudulent pretenses, representations, and promises, did transmitt and cause to be transmitted by

means of wire communication in interstate or foreign commerce, writings, signs, signals, and sounds for the purpose of executing the

scheme or artifice to defraud,

in violation of Title _____18_____ United States Code, Section(s) __1343 & 1349__

I further state that I am a(n) __Special Agent, Federal Bureau of Investigation__ and that this complaint is based
<br>Official Title

on the following facts:  **See attached Affidavit**

Continued on the attached sheet and made a part hereof::  **Yes**

_____
Signature of Complainant
Scott Austin Duffey
Special Agent, Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

__June 13, 2005__    at    Wilmington, DE
<br>Date                      City and State

**Honorable Mary Pat Thynge**
<br>__United States Magistrate Judge__
<br>Name & Title of Judicial Officer          Signature of Judicial Officer

FILED

JUN 1 3 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## AFFIDAVIT OF SPECIAL AGENT SCOTT DUFFEY

Special Agent Scott Austin Duffey, being duly sworn, states and deposes the following:

1.       I am employed as a Special Agent(SA) of the Federal Bureau of Investigation (FBI) and have been so employed for eight and a half years. I received fifteen weeks of formalized training at the FBI Academy in Quantico, Virginia which included courses on investigations of fraud and crimes against the elderly. I also attended two one week training courses focusing on fraudulent schemes perpetrated against the elderly. Prior to my employment with the FBI, I was a police officer for five and a half years in Pennsylvania. In the course of my law enforcement career I have actively participated in the preparation and execution of a over dozen arrest warrants in theft and fraud related investigations.

2.       I submit this affidavit in support of a criminal complaint charging Victoria Jennifer Martin, as she is currently identifying herself, with Conspiracy to Commit Wire Fraud, in violation of United States Code (USC), Title 18, Sections 1343 and 1349.

3.       On June 10, 2005, Detective Alan Beck, Redondo Beach, California Police Department, notified your affiant regarding a fraud scheme he was investigating. Detective Beck stated that a Redondo Beach, California resident, a female senior citizen, was being contacted by telephone from several different parties claiming to be representing the victim regarding a life insurance policy allegedly taken out by the victim's deceased husband. Apparently the unknown callers wanted the victim to send "good faith" money in the form of cash to a location in Delaware to cover back taxes and additional expenses in order to receive $400,000 in life insurance policy proceeds. Detective Beck stated to your affiant that the money was to be sent via UPS overnight delivery to Barbara Johnson, 140 South Dupont Highway, New Castle, Delaware, 19720. Detective Beck further stated that he conducted an online Google search of the address 140 South Dupont Highway, New Castle, Delaware 19720, and learned that it was the address for Budget Motor Lodge.

4.       On June 10, 2005 your affiant first spoke with the victim by telephone and learned the following information regarding this fraudulent scheme. The victim received a telephone call on June 9, 2005 from a woman identifying herself as an United States Treasury employee. The employee provided the name of the victim's deceased husband, and stated that the victim was the beneficiary of a life insurance policy. The female caller then transferred the victim to a "supervisor," a woman identified as Meyer Granden. Granden stated that the decedent took out a life insurance policy worth $400,000, and wanted the victim to send cash through UPS to reopen the account. The victim indicated that she could send $10,000 immediately. The victim was then directed by the caller Granden to call Barbara Johnson at telephone number When the victim called                    she was voice prompted to call                    The victim left a message and was subsequently called back from a female caller identifying herself as Barbara Johnson. Johnson relayed to the victim the names of the victim's deceased husband and two children. The victim was told that, in order to get the $400,000 life insurance settlement, she needed to send $55,000 plus $15,095 in back taxes. Johnson provided an Idaho address as her mailing address.

5.      Thereafter, the victim was prompted to again call Meyer Granden at ▬▬▬▬, or ▬▬▬▬▬ or ▬▬▬▬▬. The victim spoke with Granden and was then transferred to a female caller identifying herself as Mrs. Hetra who represented herself to be a clerk for a Baltimore Court Judge. The victim was told by Hetra that the insurance policy would remain active if the victim sent the $10,000. The victim was then transferred back to Meyer Granden, who told the victim to send the $10,000 cash to Barbara Johnson, c/o 140 South Dupont Highway, New Castle, Delaware 19720. The victim was further told by Granden that a UPS driver would be at the residence to pick up the package.

6.      On June 10, 2005, the victim contacted her local police department regarding the series of telephone calls she had been having regarding the alleged insurance policy. The victim provided the information she had thus far to Detective Alan Beck, Redondo Beach, California Police Department. Detective Beck conducted research and determined that it was a fraud scheme. The victim was advised to maintain contact with the calling parties and lead them to believe that she was sending the $10,000 as promised through UPS to the address provided by Granden. The victim was advised by Detective Beck not to send $10,000 in cash, but to fill the package with newspapers instead. The victim was contacted by Granden again on June 10, 2005 and the victim indicated that she was sending the $10,000 through UPS to the original address.

7.      On June 10, 2005, the victim sent a package through UPS, tracking number **1ZX0X9905865301182,** overnight delivery to 140 South Dupont Highway, New Castle, Delaware, 19720. The victim left messages on one or more of the telephone numbers given to her by Meyer Granden and Barbara Johnson, in which messages she provided the UPS tracking number on different voice mails.

8.      On June 10, 2005, an employee from the Budget Motor Lodge was contacted by your affiant. Your affiant was told by this employee that a telephone reservation for June 11, 2005 had been made in the name of Barbara Johnson and Vena Granden.

9.      On June 11, 2005, shortly after 12:00 p.m., an employee from Budget Motor Lodge, 140 South Dupont Highway, New Castle, Delaware 19720, contacted your affiant regarding a UPS Express Envelope delivery to the Motor Lodge that day. The package was signed for at the Motor Lodge front desk by an employee named Baily. The employee stated that the package was addressed to M. Granden and Barbara Johnson, tracking number **1Z0X0X9905865301182.** The employee further indicated that she received a suspicious telephone call from a female caller stating that she was from UPS. The caller stated to the employee that Barbara Johnson lost her luggage at the airport and that she would be in the Motor Lodge later this date.

10.     On June 11, 2005, surveillance was conducted by your affiant and other members of the FBI at the Budget Motor Lodge located at 140 South Dupont Highway, New Castle, Delaware 19720.

11.     On June 11, 2005 at approximately 10:45 p.m., your affiant learned from an employee at the Budget Motor Lodge that a black female identifying herself first as Barbara

Johnson then Veena Granden had checked into room # 416. That same female asked if UPS delivered a package to the Motor Lodge and asked if "Baily" was available. When informed that the package had been delivered but was locked in the manager's office, the black female (Johnson/Granden) stated to a Motor Lodge employee that she would return in one hour. Surveillance conducted by members of the FBI observed the black female subject Barbara Johnson leaving the Budget Motor Lodge and walking into a nearby business parking lot. Johnson was then observed getting into a car that was occupied by two other individuals. The car exited the lot and left the area. No further description was provided to your affiant.

12.    Your affiant conducted an all night surveillance of room # 416. Your affiant can state that no persons entered room # 416. Your affiant can also state that at approximately 11:00 a.m. on June 12, 2005, a yellow taxi cab was observed by your affiant pulling into the parking lot of the Budget Motor Lodge. Your affiant observed a black female exiting the taxi cab and entering room # 416. An employee from the Budget Motor Lodge stated to your affiant that this black woman was the same woman who had checked into the Budget Motor Lodge the evening of June 11, 2005 under the names, Barbara Johnson/Veena Granden.

13.    Your affiant went inside the lobby of the Budget Motor Lodge and observed the UPS express envelope package addressed to Barbara Johnson and M. Granden. Your affiant remained in the employee area of the lobby and took the role of the manager. A short time later, the same black female (Barbara Johnson) exited room # 416, arrived in the lobby area of the Motor Lodge, and asked a Lodge employee if a manager had arrived to open the office yet. The employee stated that the office was still locked, and that the manager would arrive shortly. The employee requested that this woman (Barbara Johnson) fill out and sign a guest registration card, which she completed in the name of:  Johnson, ⬛⬛⬛⬛⬛⬛⬛⬛ Passadeena, Ca., 91668. The woman (Barbara Johnson) then was observed going back into room # 416.

14.    Thereafter, a Motor Lodge employee contacted room # 416 and told the guest that the manager was at the Motor Lodge. Your affiant observed the same black woman (Barbara Johnson), who filled out the registration card, exit room # 416 and enter the lobby.

15.    The woman stated to your affiant that her name was Barbara Johnson and that she was waiting for a UPS package that was to be delivered to her this date. She filled out another registration card, this time in the name of Barbara Johnson and Vennes Brandon, ⬛⬛⬛⬛⬛ Passadenna, CA, stating that she wanted to stay one more night.

16.    When your affiant requested photo identification from the woman identifying herself as Barbara Johnson, she stated that she left it in her mother's car, who was shopping at the mall. The woman identifying herself as Johnson also signed a piece of paper in the name of Barbara Johnson, providing the address of ⬛⬛⬛⬛⬛⬛⬛⬛ Pasadena, CA 91160, telephone number ⬛⬛⬛⬛⬛, and a birth date of ⬛⬛⬛ 1966. The UPS package was then released to her.

17.    The female accepting the UPS package was arrested by FBI agents inside the lobby area. The female identifying herself as Barbara Johnson was advised by your affiant of her Miranda warnings. The subject stated that her name was Jennifer Martin. She then followed up

with the name Victoria Jennifer Martin, date of birth ███████ 1976. Martin stated that she was told by a male subject known as "Mo" to go to the Budget Motor Lodge and get a room in the name Barbara Johnson. Martin was then told to retrieve a UPS package in the name of Barbara Johnson. Martin followed the instructions and added that "Mo" drove her to the hotel in a yellow taxi cab. Martin picked up the package in Barbara Johnson's name as instructed. Martin was asked if she had ever picked up packages similar to the one she picked up on June 12, 2005. Martin responded that she did a similar pick-up from at least two other hotels. She stated that she picked up packages from the Super 8 Motel that was located near the Budget Motor Lodge. She stated that she also picked up packages from the Best Western Hotel. Martin stated that this may have happened a month ago. Martin was shown a surveillance photograph of female inside the Super 8 Motel on May 20, 2005. Your affiant retrieved the surveillance photograph from the Super 8 Motel due to an ongoing fraud investigation between the Pasadena Police Department and the FBI in Wilmington, Delaware, whereby an elderly victim from Pasadena, California sent $25,000 in cash through UPS after being told the victim would get $500,000 from an inheritance. The Super 8 Motel's surveillance cameras depicted a female, whom Martin identified as herself, arriving in the hotel. The same female depicted in the surveillance photo retrieved a UPS package in the name of Cary Winter, which contained the $25,000 from the Pasadena victim. Martin also was shown a May 3, 2005, surveillance photo obtained by your affiant from the Holiday Inn Select located on Naamans Road, Wilmington, Delaware. The ongoing fraud investigation revealed a prior fraud scheme where an elderly victim sent approximately $51,500 in cash through Federal Express after being told the victim would receive approximately $500,000 from an inheritance. Martin looked at the surveillance camera photo taken on May 3, 2005, at the Holiday Inn Select and identified the person in the photo as her.



18.    Martin was in possession of a blue back pack at the time of check in at the Budget Motor Lodge. Martin left the blue back pack in room #416 after she checked into the Motor Lodge. Upon Martin's arrest, she was asked if she had any items to retrieve from her room. Martin stated to your affiant that she had a blue back pack that she wanted to retrieve from the room. The blue back pack was retrieved, and Martin identified the back pack as hers.

19.    The blue back pack was checked for inventory purposes. The back pack only contained a pen, acne treatment ointment, and a piece of paper with writing on it. Your affiant observed on the paper several telephone numbers on one side of the paper and the telephone number 1-80█-742-5877 followed by a series of numbers and letters that read: "1ZX0X9905865301182."

20.    Your affiant learned that the telephone number 1-800-742-5877 is toll free telephone number to UPS. Your affiant also noted that the numbers and letters reading 1ZX0X9905865301182 were the same as the tracking number listed on the UPS package seized from Martin at the Budget Motor Lodge.

21.    Based on the above information, your affiant maintains that there is probable cause to believe that on or about June 12, 2005, in the State and District of Delaware, Victoria Jennifer Martin conspired to commit wire fraud, that is, conspired to devise and intending to devise a scheme or artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and did transmit and cause to be transmitted by means of wire communication in interstate or foreign commerce, writings, signs, signals, and sounds for the purpose of executing the scheme or artifice to defraud, in violation of United States Code, Sections 1343 and 1349.

Sworn to and subscribed before me this date _____

Mary Pat Thynge
United States Magistrate
District of Delaware

Scott A. Duffey, FBI
Special Agent